## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| **LISA McMAHON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 21-3271** |
| | ) | |
| **IAN DENNIS, et. al,** | ) | |
| | ) | |
| **Defendants.** | ) | |

### <u>OPINION AND ORDER</u>

**SUE E. MYERSCOUGH, U.S. DISTRICT JUDGE:**

Before the Court is Defendant Ian Dennis' Motion for Partial Summary Judgment (d/e 23). For the reasons set forth below, the motion is DENIED.

### I.   INTRODUCTION

On December 22, 2021, Plaintiff filed the instant action pursuant to 42 U.S.C. §1983, alleging various violations of her constitutional rights. In Counts I, II, and III Plaintiff alleges Defendant Ian Dennis violated Plaintiff's Fourth Amendment rights during an unreasonable seizure, Fourteenth Amendment rights during a false arrest, and utilized excessive force in violation of the Eighth Amendment, respectively. (d/e 1, pp. 4-7). In Count IV,

Plaintiff brings a state law claim for malicious prosecution and in Count V, an indemnification claim pursuant to statute.

On August 24, 2023, Defendant filed a Motion for Partial Summary Judgment (d/e 23) and a Memorandum in Support (d/e 24). Plaintiff filed her response on October 12, 2023 (d/e 26), and Defendant filed his Reply on November 11, 2023 (d/e 30).

## II.    JURISDICTION AND VENUE

The Court has subject matter jurisdiction over Plaintiff's Section 1983 claims because they arise under the United States Constitution and are brought pursuant to a federal statute. See 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). Because Plaintiff's state law claims against Ian Dennis and the City of Beardstown are related to Plaintiff's Section 1983 claims such that the claims form part of the same case or controversy, the Court has supplemental jurisdiction over the state law claims. See 28 U.S.C § 1367(a).

The events giving rise to Plaintiff's claims occurred in Cass County, Illinois, which is located within the boundaries of the Central

District of Illinois. Venue is, therefore, proper in this district. See 28 U.S.C. § 1391(b)(2) (stating that a civil action may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred").

## III.   FACTS

The Court draws the following facts from the parties' statements of material facts in the Defendant's Motion for Partial Summary Judgment (d/e 23), Defendant's Memorandum of Law in Support (d/e 24), Plaintiff's Memorandum in Opposition (d/e 26), and Defendant's Reply (d/e 30). Any fact submitted by any party that was not supported by a citation to evidence will not be considered by the Court.   *See* Civ. LR 7.1(D)(2)(b)(2). Any response to an allegedly disputed fact unsupported by evidentiary documentation is deemed admitted. *Id.*

On February 15, 2021, Lisa McMahon was in Beardstown, Illinois visiting a friend, Mr. Surratt. (d/e 24, p. 2). During the evening, it was very snowy. (d/e 24, Ex. B; d/e 26, Ex. 1). While visiting Surratt, she drove to the Wheel Inn to play slot machines at approximately 3pm. (d/e 24, Ex. A). Ms. McMahon left the Wheel Inn

sometime between 6:45 and 7pm and did so on foot, although she drove to the bar. Id. While McMahon was at the bar, she observed an individual put his car "into a ditch" and knew the police were coming. (d/e 24, p. 3). After observing this car going into the ditch, Ms. McMahon utilized her smartphone to record a video of people attempting to move the car from the ditch. Id.

Officer Ian Dennis was on his routine patrol on February 15, 2021, when he heard a radio call concerning an accident outside of Wheel Inn. (d/e 24, Ex. B). On the same date and approximate time, officer Christopher Baer was employed as a patrol officer for the City of Beardstown and responded to this reported accident. (d/e 24, Ex. C). This accident was near the intersection of West 6th Street and Arenz Street in Beardstown. Id. After his arrival at this intersection, Officer Baer encountered Ashley R. Evans and Carlos D. Mitchell, who had witnessed the accident. (d/e 24, Ex. C). Mitchell and Evans told Officer Baer that an unknown white female, wearing a gray jacket left on foot from the scene of the accident. Further, these witnesses told Officer Baer that the female was intoxicated, tried to dissuade them from calling the police, and discussed "blackmailing" the driver involved in the accident. (d/e 24, p. 6). Lastly, these witnesses told

Officer Baer where Ms. McMahon's vehicle was parked and that she took a video of the accident. (d/e 26, Ex. 1; d/e 30).

While Officer Baer was speaking to individuals at the scene, Officer Dennis began heading in the direction of the bar and determined Officer Baer arrived on the scene first. Officer Baer advised Officer Dennis that a female had walked off from the Wheel Inn. Id. Officer Baer further provided a description of the female after speaking to Mitchell and Evans and noted she was white and in a gray jacket. (d/e 24, p. 4; d/e 26, p. 3). While speaking to individuals at the Wheel Inn, Officer Baer spoke with the driver of the vehicle that had slid off the road, who told Baer that he was alone in his vehicle. (d/e 26, Ex. 1).

Officer Dennis arrived on scene and began searching the area to see if any female matching the description given could be located. (d/e 24, Ex. B). During this search, Officer Dennis located footprints in the snow and followed them back to the Wheel Inn, more specifically, near the accident site. Id. Officer Dennis then followed the footprints leading away from the Wheel Inn to Surratt's residence a few blocks away.

After Officer Dennis parked his car near the residence, a woman opened the man door of the garage. (d/e 24, p. 4). This woman, Ms. McMahon, matched the description given to Officer Dennis by Officer Baer. Id. After making eye contact with Officer Dennis, Ms. McMahon went back inside the garage then exited the side door and walked toward the officer. (d/e 24, pp. 4-5; d/e 26, p. 5). The parties dispute the first statement of Officer Dennis to Ms. McMahon, but agree Ms. McMahon's response was that she was not in an accident. (d/e 24, p. 5). Ms. McMahon voluntarily identified herself to Officer Defendant when asked to. (d/e 26, Ex. B).

Ms. McMahon further informed the officer that she knew the person in the auto accident, and the person involved was a "short white guy" and a "teacher at the school." (d/e 24, Ex. A, p. 53). Ms. McMahon did not have identification on her, but provided a birthdate and driver's license number. (d/e 24, Ex. B, p. 81). Ms. McMahon followed Officer Dennis to his car so he could get a piece of paper to write down her information. (d/e 26, Ex. B). Once this information was provided to Officer Dennis, Ms. McMahon heard and observed Officer Dennis on his radio, and he didn't have much more conversation with her. Id. During this interaction Officer Dennis

overheard some radio traffic where Officer Baer ran the license plate of Ms. McMahon's car which was still at the Wheel Inn. (d/e 24, Ex. B, pp. 82-83).

According to the Computer Aided Dispatch, or CAD records, at approximately 7:41 pm, Officer Dennis sent a radio transmission noting the address where he was and that a female ran into a garage. (d/e 26, Ex. B, p. 3).[1] Two minutes later, at 7:43 pm Officer Baer directed Officer Dennis to detain the female at the residence. *Id.* The parties dispute whether Ms. McMahon was already in handcuffs before receiving the 7:43 pm transmission from Officer Baer. The parties do not dispute that the reason Ms. McMahon was detained, was based on the information Officer Baer provided to Officer Dennis. (d/e 24, p. 5, UMF 33, d/e 26, p. 3).

After Ms. McMahon followed Officer Dennis to his car, he informed Ms. McMahon that she was going to be detained and placed her in handcuffs. (d/e 24, Ex. A, pp. 60-61; d/e 26, Additional Material Facts 9, 12; d/e 30, p. 3).

### IV.   LEGAL STANDARD

---

[1] Although the Parties agree that CAD Systems entries do not represent a verbatim real time record of what transpired (d/e 24, 25), the Court finds it helpful it detailing a general chronology.

When moving for summary judgment under Rule 56 of the Federal Rules of Civil Procedure, the moving party bears the burden of showing, based on the materials in the record, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a) & (c); *Hummel v. St. Joseph Cty Bd. of Comm'rs*, 817 F.3d 1010, 1015–16 (7th Cir. 2016).  "The moving party has the burden of either: (1) showing that there is an absence of evidence supporting an essential element of the non-moving party's claim; or (2) presenting affirmative evidence that negates an essential element of the non-moving party's claim."  Id.  But even where there is no dispute as to the basic facts of a case, summary judgment will not be appropriate "if the parties disagree on the inferences which may reasonably be drawn from those undisputed facts."  *Cent. Nat. Life Ins. Co. v. Fidelity & Deposit Co. of Md.*, 626 F.2d 537, 539–40 (7th Cir. 1980).  The facts and all reasonable inferences derived therefrom are viewed in the light most favorable to the non-moving party.  *Woodruff v. Mason*, 542 F.3d 545, 550 (7th Cir. 2008).

## V.   ANALYSIS

Plaintiff Lisa McMahon alleges Officer Ian Dennis violated her constitutional rights under 42 U.S.C. §1983 to be free from unreasonable seizure, excessive force, false arrest, and malicious prosecution. (d/e 25, p. 1). Defendant moves for partial summary judgment solely as to Count I as to an unreasonable seizure.

## A. Defendants Are Not Entitled to Summary Judgment on Plaintiff McMahon's Unreasonable Seizure Claim.

### i.   Seizure and Terry Stop

Defendant Dennis argues that he had reasonable suspicion to believe Ms. McMahon was involved in a motor vehicle crash and she may have fled the accident, therefore, the *Terry* stop was justified. Further, Defendant relies on the "collective knowledge doctrine" in furtherance of this argument, as he was provided information from Office Baer from the scene of the accident to justify his suspicions.

A Fourth Amendment inquiry requires the Court to determine (1) whether a seizure actually occurred, and if so, (2) whether the seizure was reasonable. *See Florida v. Jimeno*, 500 U.S. 248, 253 (1991); *Carlson v. Bukovic,* 621 F.3d 610, 618 (7th Cir. 2010).

A "seizure" occurs when a person's "freedom of movement is restrained" either "by means of physical force or show of authority."

*United States v. Mendenhall*, 446 U.S. 544, 552 (1980). "If a reasonable person would feel free to terminate the encounter, then he or she has not been seized." *United States v. Drayton*, 536 U.S. 194, 201 (2002). This standard is objective and is "made on the basis of the 'totality of the circumstances' surrounding the encounter." *United States v. Jerez*, 18 F.3d 684, 690 (7th Cir. 1997). In considering the totality of the circumstances, factors include:

> (1) Whether the encounter occurred in a public place; (2) whether the suspect consented to speak with the officers; (3) whether the officers informed the individual that he was not under arrest and was free to leave; (4) whether the individuals were moved to another area; (5) whether there was a threatening presence of several officers and a display of weapons or physical force; (6) whether the officers deprived the defendant of documents she needed to continue on her way; and (7) whether the officers' tone of voice was such that their request would likely be obeyed.

*United States v. Barker,* 476 F.3d 625, 629 (7th Cir. 2006).

Taking these factors into consideration, the Court finds that Ms. McMahon's detention was a seizure. Once Officer Dennis arrived at

the home of Mr. Surratt, Ms. McMahon was generally agreeable to providing the officer with information. She provided her name and other personal information and willingly walked back to Officer Dennis' car so he could write down the information he was given. This conversation occurred at the home of Surratt and she was never told she was free to leave. These facts, among others, indicate that this detention was indeed a seizure. Additionally, although Ms. McMahon clearly felt she was being ignored while telling Officer Dennis she was not involved in an accident, she did not feel free to leave, although she was getting more and more frustrated. Further, Defendant Dennis at his deposition testified that if someone is "detain(ed)" that means they are not free to leave. (d/e 24, Ex. B, p. 85).

Next, the Court must determine whether the seizure was unreasonable. Defendant admits that McMahon was "detained" and argues that he was conducting a *Terry* stop based on the reasonable suspicion that she was involved in the car accident and had fled the scene. *See* d/e 24, pp. 7-9. Specifically, Officer Dennis argues he relied on knowledge from Office Baer who was at the scene, pursuant

to the "collective knowledge doctrine," citing *Untied States v. Eymann,* 962 F.3d 273, 283-84. (7th Cir. 2020).

A *Terry* stop may be conducted if the officer has reasonable, articulable suspicion that the individual has committed or is about to commit a crime. *See Terry*, 392 U.S. at 20-22; *United States v. Booker,* 579 F.3d 835, 838 (7th Cir. 2009). This investigatory stop of an individual should be brief when conducted by law enforcement officers. *Id.* A reasonable suspicion is a "less demanding standard" than probable cause. *United States v. Lopez*, 907 f.3d 472, 479 (7th Cir. 2018).  However, the officer initiating the investigatory stop must be able to point to "specific and articulable facts" that suggest criminality, rather than basing his actions on a mere hunch. *Terry*, 392 U.S. at 21-22. Reasonable suspicion is an objective inquiry based upon the totality of the circumstances known to the officer at the time the stop is made. *United States v. Hicks*, 531 F.3d 555, 558 (7th Cir. 2008).

Defendant argues that he had reasonable suspicion to detain Ms. McMahon based upon witness statements at the scene to Officer Baer. Specifically, the witnesses provided Officer Baer: (1) a description of a woman in a grey coat who walked away from the

Wheel Inn, (2) that this woman was intoxicated, (3) she wanted to blackmail the driver of the car in the ditch, and (4) she had tried to dissuade them from calling the police. (d/e 24, p. 4-6, UMFS 43-45; d/e 26, pp. 3-4). Additionally, Defendant argues that along with this knowledge, he followed Ms. McMahon's footsteps in the snow from the Wheel Inn to Mr. Sutter's home and a vehicle registered to Ms. McMahon was parked at the Wheel Inn.

Of particular note, Ms. McMahon admits that various witnesses gave statements to Officer Baer with a description fitting her (a woman who walked home in a grey coat) and that they alleged she was intoxicated, interested in blackmail, and tried to dissuade them from calling the police. (d/e 24, UMFs 44, 45; d/e 26 UMFs 44, 45). Plaintiff does, however, argue and dispute the timeline of these facts and when they were provided to Officer Dennis.

Plaintiff's arguments in opposition are mainly in two parts. First, that the seizure cannot be reasonable because Officer Baer had information indicating that Plaintiff was not involved in any criminal activity and, therefore, no reasonable suspicion existed that Officer Dennis could rely on in justifying a *Terry* stop, collective knowledge not withstanding. Second, that Officer Dennis seized the Plaintiff

before he was provided any information that could indicate that a criminal activity had or was occurring. This Court disagrees.

As an initial matter, it is undisputed that Officer Baer received a description of the Plaintiff, information that she was intoxicated, possibly wanted to attempt blackmail and was against calling the police. Additionally, a review of vehicle registration of a car at the Wheel Inn parking lot, revealed it was indeed registered to the Plaintiff. Although Plaintiff argues that Officer Baer was told by the alleged driver of the vehicle involved in the collision that he was the only one in the car, knowing one individual left the scene on foot before the police arrived would require verification they were not involved.

While "reasonable suspicion" is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, the Fourth amendment requires at least a minimal level of objective justification for making the stop. *Illinois v. Wardlow,* 528 U.S. 119, 123-124 (2000) *citing United States v. Sokolow,* 490 U.S. 1, 7 (1989). The officer must be able to articulate more than an "inchoate and unparticularized suspicion of 'hunch;" of criminal activity. *Terry* at 27.

At a minimum, Plaintiff's behavior was suspicious and would warrant further conversation and possible investigation. *See Adams v. Williams,* 407 U.S. 143, 146 (1972) ("A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be the most reasonable in light of the facts known to the officer at the time"). Considered holistically, the totality of the circumstances including Plaintiff's departure from the bar on foot, witness statements and description, easily satisfy the "minimal level of objective justification" required to establish reasonable suspicion for a *Terry* stop. *Wardlow* at 123.

The analysis regarding Officer Dennis is similar. Officer Dennis overheard radio traffic of a disturbance at the Wheel Inn and was en route. Once he arrived and learned there was a female who left on foot from the bar, Officer Dennis followed a set of footsteps from the bar and arrived at the home of Surratt. Officer Dennis was provided a description of the individual from Officer Baer over the radio given by witnesses of the Wheel Inn as female, intoxicated, and wearing specific clothing. (d/e 24, UMF 17, 18, 44, 45; d/e 26, UMFs pp. 3-4).

Officer Dennis could rely upon this information pursuant to the "collective knowledge doctrine" which allows the arresting officer to rely on the knowledge of others in the agency to establish the facts in support of probable cause. *Eymann,* 962 F.3d 273, at 284. Given the facts here are referring to a *Terry* stop, as opposed to an arrest, the bar is lower in terms of what the established facts must show. Specifically, reasonable suspicion is a lower threshold than probable cause. In order for the collective knowledge doctrine to apply, (1) the officer taking the action must act in objective reliance on the information received, (2) the officer providing the information – or the agency for which he works – must have facts supporting the level of suspicion required, and (3) the stop must be not more intrusive than would have been permissible for the officer requesting it. *See United States v. Sands*, 815 F.3d 1057, *citing United States v. Williams*, 627 F.3d 247 (7th 2010).

As discussed *supra*, reviewing a totality of the facts provided to Officer Baer at the time of this interaction, Officer Baer had a reasonable suspicion Ms. McMahon was engaged in some sort of illegal activity. This information, including Ms. McMahon's alleged intoxication, departure from the scene, and description was

communicated to Officer Dennis who relied on it, especially during his interaction with Ms. McMahon. Officer Dennis personally observed the Plaintiff who spoke to him willingly and began taking her personal information. At some point while speaking with Ms. McMahon Officer Dennis was provided additional information relating to Ms. McMahon's vehicle remaining at Wheel Inn although she left on foot.

Plaintiff cites *United States v. Lenoir*, noting the Seventh Circuit held that a "police observation of an individual, fitting a police dispatch description of a person involved in a disturbance, near in time and geographic location to the disturbance establishes a reasonable suspicion that the individual is the subject of the dispatch" can justify a *Terry* stop. *United States v. Lenoir*, 318 F.3d 725, 729 (7th Cir. 2003). Plaintiff seeks to distinguish herself from this case, but the situation at bar is similar, although the individual subject in *Lenoir* was alleged to have a gun and Plaintiff was not.

Here, there was a specific description given to Officer Dennis, regarding a woman in a gray coat, heading northbound from an accident at the Wheel Inn close in time and geographic location and the footsteps ended at the residence she was visiting. A *Terry* stop

gives officers a chance to verify (or dispel) well-founded suspicions that a person has been, is, or is about to be engaged in criminal activity. *United State v.* Smith, 3 F.3d 1088, 1091 (7th 1993) *citing United States v. Boden*, 854 F.2d 983, 992 (7th 1988).

Both Officer Baer and Officer Dennis, through the collective knowledge doctrine, clearly had a reasonable suspicion as to Plaintiff's involvement with some criminal activity. The departure on foot, fitting a clear description and allegation of intoxication warrants further investigation. Clearly this is what Officer Dennis sought to do after receiving the initial description and information from Officer Baer. Therefore, Officer Dennis had the requisite reasonable suspicion to conduct a *Terry* stop, especially while more information was sought from the Wheel Inn by Officer Baer to preserve the status quo and collect more information.

ii.   **Use of Handcuffs**

Although the Court has now found that the interaction between Ms. McMahon and Officer Dennis was a seizure and Officer Dennis did have reasonable suspicion to conduct a *Terry* stop, the Court's analysis does not stop there. A *Terry* stop is intended to be as brief and minimally intrusive as possible. *United States v. Bullock*, 632

F.3d 1004 (7th Cir. 2011). Further, when relying upon a theory of the collective knowledge doctrine, any intrusion must be not more intrusive than would have been permissible for the officer requesting it. *See United States v. Sands*, 815 F.3d 1057, *citing United States v. Williams*, 627 F.3d 247 (7th 2010).

Plaintiff argues that the stop and handcuffing of Plaintiff was not as brief and minimally intrusive as possible: specifically, that Officer Dennis' conduct was "vastly out of proportion to any investigative need." (d/e 26, p. 11). Defendant states that Plaintiff was immediately irate upon his arrival at Mr. Surratt's residence, was seemingly intoxicated with slurred speech, and smelled of alcohol. Defendant also alleges Ms. McMahon began shouting and yelling when notified he was detaining her, became combative, and resisted being put in handcuffs by leveraging her weight against the squad car.

In evaluating whether the force that an officer used to effectuate the investigatory stop was so disproportionate to the purpose of such a stop as to convert the encounter into a full arrest, the Seventh Circuit has considered whether the surrounding circumstances gave

rise to a justifiable fear of personal safety on the part of the officer. *Jewett v. Anders*, 521 F.3d 818, 824 (7th 2008).

Ms. McMahon, unlike the plaintiff in *Rabin v. Flynn*, did not have a fully loaded firearm on her, or any other type of weapon visible to the Defendant that would be an immediate safety concern to an officer. *Rabin v. Flynn*, 725 F.3d 628 (7th Cir. 2013).

 In further support, Plaintiff refers to cases in which the Seventh Circuit has expressed distaste for the use of handcuffs during *Terry* stops in certain circumstances. However, the Court did not prohibit the use of handcuffs, but rather expresses some concern. Indeed, the Seventh Circuit has noted that "[t]he proliferation of cases in this court in which *'Terry'* stops involve handcuffs and ever-increasing wait times in police vehicles is disturbing, and we would caution law enforcement officers that the acceptability of handcuffs in some cases does not signal that the restraint is not a significant consideration in determining the nature of the stop." *Ramos v. City of Chicago,* 716 F.3d 1013, 1018 (7th Cir. 2013); *see also United States v. Smith*, 3F.3d 1088, 1094 (7th Cir. 1993).

As discussed *supra,* at the summary judgment stage, the facts must be taken in the light most favorable to the Plaintiff. Here,

Plaintiff argues she was not fighting back, there was no cause for concern to officer safety, and that Officer Dennis detained her by handcuffing her for "no reason". (d/e 24, Ex. A, p. 134). Thereafter, she fell to the ground and allegedly sustained injuries. Officer Dennis' sworn testimony at his deposition further supports Plaintiff's contention that there was no perceived threat to him and that Plaintiff was placed in cuffs immediately after Officer Dennis noted he would be detaining her.

Although the use of handcuffs could be justified as Officer Baer may have sought to detain Plaintiff as she specifically left the scene seemingly to avoid police interaction, there is no dispute that Plaintiff did not have a weapon at the time of the initial stop and subsequent hand handcuffing.  The facts taken in the light most favorable to Plaintiff provide an issue of material fact as to whether the use of handcuffs was necessary and minimally intrusive, and thereby whether the *Terry* stop conducted was reasonable. In sum, the immediacy of the use of force and the seeming lack thereof any threat to officer safety further supports this conclusion. *See Mwangangi v. Nielsen,* 48 F.4th 816, 82-827 (2022) *citing United States v. Glenna*, 878 F.2d 967, 973 ("while there is no categorical rule that an officer's

decision to place a suspect in handcuffs always transforms the interaction from a *Terry* stop into an arrest, it is the "rare case" in which common sense and ordinary human experience convince us that an officer believed reasonably that an investigative stop could be effectuated safely only in this manner.") Defendant has not proven that as a matter of law he is entitled to summary judgment as to Plaintiff's unreasonable seizure claim, as there is a genuine issue of material fact regarding the utilization of handcuffs and what effect it hand on the interaction at issue in Plaintiff's Count I.

## B.  Defendant Is Not Entitled To Qualified Immunity

A defendant is entitled to qualified immunity in the Fourth Amendment context if a reasonable officer could have believed that "arguable" reasonable suspicion (for a traffic stop) or "arguable" probable cause (for an arrest) existed to detain the plaintiff. *See Huff v. Reichert,* 744 F.3d 999, 1007 (7th Cir. 2014) (quoting *Humphrey v. Staszak*, 148 F.3d 719, 725 (7th Cir. 1998) (arguable reasonable suspicion and probable cause are established "when a reasonable officer 'in the same circumstances and . . . possessing the same knowledge as the officer in question could have reasonably believed

that [reasonable suspicion or] probable cause existed in light of well-established law.'"); *Rouei v. Vill. of Skokie*, 61 F. Supp. 3d 765, 778 (N.D. Ill. 2014) ("[Q]ualified immunity exists in a false arrest case where there is 'arguable' probable cause, ... and thus [qualified immunity] likely exists in a false *Terry* stop case where there is 'arguable' reasonable suspicion.").

In practice, this means that a government actor is entitled to qualified immunity unless the plaintiff shows that: (1) the facts, read in favor of the non-moving party, amount to a constitutional violation; and (2) the constitutional right was clearly established at the time of the alleged violation. *See Rainsberger v. Benner*, 913 F.3d 640, 647 (7th Cir. 2019); *Leiser v. Kloth*, 933 F.3d 696, 701 (7th Cir. 2019), cert. denied, 140 S. Ct. 2722, 206 L. Ed. 2d 856 (2020) (qualified immunity is an affirmative defense, but once a defendant properly raises the defense, the burden shifts to the plaintiff to defeat it). The Court need not always address both questions in the qualified immunity analysis. *Pearson v. Callahan*, 555 U.S. 223, 236-42, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009). "[I]f the law was not clearly established, there is no need to tackle the (often harder) question

whether the challenged conduct violated the Constitution." *Rainsberger*, 913 F.3d at 647. But where the law was clearly established, both qualified immunity questions must be addressed. *Id.*

Defendant argues that qualified immunity is appropriate here because it shields from liability police officers, "who act in ways they reasonably believed to be lawful." *Anderson v. Creighton,* 483 U.S. 635, 638 (1987). Defendant further argues that qualified immunity provides "ample room from mistake in judgment" and protects all but the plainly incompetent and those who knowingly violate the law." (d/e 24, p. 10). The Court has previously found that a genuine issue of material fact remains that allows for a reasonable jury to make two differing conclusions regarding the use of handcuffs and whether said use of force was more than minimally intrusive in violation of *Terry*.

If the *Terry* stop was not minimally intrusive, then Officer Dennis violated Ms. McMahon's clearly established right to be free from unreasonable seizures. As a result, the Court cannot find that the Defendant is entitled to qualified immunity. *See Nettles-Bey v.*

*Williams*, 819 F.3d 959, 961 (7th Cir. 2016) (holding that where the admissible evidence would permit two inferences, one of which would implicate violations of a plaintiff's clearly established constitutional rights, the case must proceed to trial, and the officers are not entitled to qualified immunity). Therefore, Defendant's Partial Motion for Summary Judgment as to Plaintiff's unreasonable seizure claim is DENIED.

## VI.   CONCLUSION

Defendant has failed to carry his burden showing an absence of issue of material fact relating to Plaintiff's unreasonable seizure claim. Therefore, Defendant's Partial Motion for Summary Judgment (d/e 23) as to Plaintiff's unreasonable seizure claim is DENIED.

**IT IS SO ORDERED.**
**ENTERED: March 25, 2024.**
**FOR THE COURT**

*/s/ Sue E. Myerscough*
**SUE E. MYERSCOUGH**
**UNITED STATES DISTRICT JUDGE**